Good morning, your honors. If it pleases the court, my name is attorney Sean Allen. I represent the appellant, Mark Gilbert. And Judge Howard, with your permission, could I reserve two minutes for rebuttal? Yes. As your honors are aware, Mr. Gilbert filed a complaint after a series of events culminated in approximately 2016 at his work, where he worked at the Chicopee Police Department. And that resulted in Judge Ponser essentially ruling, paraphrasing of course, that the speech complained about in his complaint was just per se unprotected. Mr. Gilbert, as you can tell from the briefing, strongly disagrees that he didn't allege plausible and sufficient facts. Could you just pin down what specific speech you're referring to? Are you referring to the reports that he made to his supervisors? He made reports to supervisors. In paragraph 26, it's A to F. He tried to outline the best he could. He did make written reports. Well, if he doesn't know, nobody knows. Right. But the topics of what he complained about and spoke about are listed in the complaint, paragraph 26. So there was a written report regarding the gun incident, which clearly he was ordered to reduce the gun incident to writing. But there was also the civil investigation that the city commissioned surrounding the controversy regarding Defendant Jeb's conduct of failing to discipline officers, regarding the PLAS murder files, murder photos that were released to the public in the course of a murder investigation. Those things that he provided with respect to the testimony and it is in the complaint that those were not within his specific duties or enumerated duties that he had to cooperate with civil investigators. The one thing that he did... How did he get involved? He got involved, well, Judge Ponser describes the fact pattern as convoluted. And I would suggest to you, when you look at the series of events and how this culminated, it is convoluted. Well, tell me your version of how he got involved. He got involved, well, he got involved when investigators started contacting him regarding the incidents of Mr. Jeb's failure to not discipline Officer Provenos for the gun incident, to do nothing about the complaints regarding him taking, buying these lights that flashed at Rockies and putting them in the prisoner's cells in the booking area, bringing bent spoons into the booking area. By his own testimony, Officer Gilbert says he also bought some sort of ghost machine and hooked it up in the booking area. Are you saying that he could have refused to cooperate with the investigators and not answer their questions? I think with respect to Investigator Pavone, he had that option, but certainly not with DA Mastriani, because he was assigned to answer Judge... Yes, I was hoping you'd get to that. To read his question. He was assigned to do the IIU investigation of the Plass murder investigation, where he went out and found out who had the photos, whose phones they were at, who was showing the photos at a football game. Was that within the scope of his duties as a police officer? Regarding the Plass, it was within the scope of his duties. He was assigned to do that. But when you look at the stuff he complained about, I would suggest to you it rises to the matter of really public concern. You have what appears to be a decompensating police officer. I think Judge Ponzer describes him as that as well. But did he make it known to the public, or just his supervisors and investigators? It was known to the public. Did he make it known to the public? He did not call the media and make it known to the media, but the then existing mayor, Mr. Bissonnette, and he is referenced in here, did make it known to the media, did commission this Mr. Bavone to do an investigation on a series of things that they felt was deficient with respect to Mr. Jebb. The investigator went to my client. He told the truth, as well as he told the truth to DA Mastriani. I know even with respect to the Lange case that was decided by Judge Sotomayor, that person, they issued a subpoena, and she had said, well, it's a little bit different because the expectation is you're going to be truthful if you testify in court. But I would suggest to you, there's no subpoena in this particular case, but the expectation that when you're going to communicate, even as a law enforcement officer with the district attorney's office regarding a matter, you're going to be truthful. Or if you speak to an internal investigator, or an outside investigator that they hired, you're going to be truthful. He's still a police officer, is he? He just retired, but he was a police officer up until August 30th. And what is the nature of the retaliation? The retaliation encompassed one suspension, which was a week before the criminal trial. The day he, about a week and a half after Jebb won a civil service appeal, just paraphrasing for you, in the course of that, there was an exchange between him and Gilbert where he says, when I win my appeal, you're going to be, I won't go into the expletives. He immediately came into office and said, I'm taking you off your overtime duties because the statement you gave, at least the one statement, the 2013 statement regarding the gun incident, he was ordered by Chief Charette that said, you're either going to reduce it to writing, and it's an order. So if he didn't reduce it to writing, he would have faced discipline. So he did reduce it to writing. But after this investigation, and Jebb became the police chief, by his own testimony, he had no idea what he was going to do about people that he thought lied about him and disparaged him. So a plan was developed where a criminal application would be taken out against Mark Gilbert, which was my client, and Tom Charette, which was the former police chief. On the day of the show cause hearing, which I know you have the show cause transcript, they withdrew against Charette, and then Charette testified against, testified with respect to what had occurred. And it was clear that the reducing of his statement to writing was not going to result in discipline. But they had to get around the collective bargaining agreement somehow. And this testimony came in from Charette and from Jebb, and it's in the record. And they were meeting with the mayor and the law department. And the vehicle to avoid the collective bargaining agreement problems with respect to discipline would be, well, let's try and get a criminal complaint for the statement that he was ordered to give. And then if he's convicted of that, he can be disciplined. So it was the wait and see. And that's what they did in this particular case. And that's the testimony of Chief Jebb, at least under oath at the show cause hearing, of course, paraphrasing that he was going to revenge the people he felt disparaged his character and put him through this investigation, when in reality it wasn't Mr. Gilbert that put him through the investigation. It was the municipality, who's also coming in here today saying that these actors should be given absolute immunity. But when you look at Pickering and the analysis with respect to absolute immunity, were they aware of the clearly established... I have a question. It's probably not relevant, and I may have missed something, but there is a collective bargaining agreement here? With Mr. Gilbert, yes. It is referenced in the complaint. Is there any reason why... Is there an arbitration clause? There is a civil service clause. So the suspension that I referenced earlier was appealed to the civil service, but in the course of then bringing it before the commission, it had to be appealed within 10 days. The appeal notice went in. The trial occurred. The complaint was filed in federal district court. The city went in paraphrasing and saying, this is included in the complaint, so we shouldn't do two forms. And Commissioner Bowman issued a one-page ruling saying it's in the complaint with respect to the nature of your saying it's a retaliatory suspension. We're not going to litigate it in both forms. Thank you. I hope that answers your question. Whoops. All right. I think that would be it. Thank you. Good morning, Your Honor. John McCarthy, Daugherty Laws, Pillsbury, Murphy & Springfield. I represent Chief William Jeb, the appellee. I guess the way to start off is that I think Judge Ponser did an outstanding job of analyzing what was presented to him and applying the law. On its best view, everything that is being alleged in terms of behavior is in the context of these parties being members of the Chicopee Police Department, obviously not the mayor or the city itself. All of the behaviors are in the context and all the allegations, to the extent that you can make them out, this is not a smoothly orchestrated symphony of problems and pieces. And that's particularly true because attached to the amended complaint, which the counsel for the plaintiff would want you to accept that all the facts are true in their light, is that part of the transcript, one of, I think, three or four days of a show cause hearing that he referenced, doesn't apply to Mr. Jeb because in that testimony Mr. Jeb denies flat out the allegations of inappropriate behavior on his part in his conduct as a police. If you read the transcript and if you read what they're arguing about, it's Jeb has responsibilities to investigate certain things, he did, he came to some conclusion, he issued some discipline, didn't issue other discipline, Gilbert didn't like that, Gilbert thought there would be better ways to do it. Jeb said the same thing about Gilbert's investigation if you read the testimony about an incident where a woman was allegedly choked in the booking room in the Chicopee Police Department, Jeb was the chief at that point, immediately suspended that officer, Gilbert was appointed as the IAB investigator, found that the officer's behavior was exemplary. The officer eventually was terminated because of his behavior in that circumstance. Again, it's really irrelevant whether you agree or disagree with what the conclusions of the investigators were, it was all done as part of their responsibilities in the Chicopee Police Department. There's no suggestion in the complaint or in the arguments that have been made that are supported by any facts that Gilbert went to the press, that Gilbert made some private citizen type of claim, that he's a whistleblower, he just disagreed with the results of certain investigatory actions by one or more of the other parties and in the context of the police department, his actions were ordered by the police department, by the mayor who is the ultimate authority who gets hired and fired and penalized. The appellant argues that at least one of those investigations was not part of his duties and responsibilities, some independent investigation carried out by Pavone. Do you have a response to that? Yes, Your Honor. It was an investigation of the Chicopee Police Department, the mayor went to an outside investigator and the investigators charged from the mayor. Remember, the mayor is the ultimate authority in terms of terminating or hiring or any of those ultimate decisions for police officers in this department. This is an investigator he assigned to unearth the issues because what was going on was internecine warfare in the department. In part around mayoral elections, which is an unfortunate event in our life, politics, but it was done as part of the ordinary investigatory discipline. The two parties, Charette and Jeb, were at odds with each other. They were in a civil lawsuit, a civil service lawsuit in the Superior Court in Hamlin County. So that's what that was. Any other questions?  Thank you, Your Honor. Good morning, Your Honors. My name is John Leibo and I represent Lieutenant John Pronovo, the defendant in the district court action on the appellee in this case now. If I could digress and go to some comments made by the appellant first and then go into my argument. The first question that was posed is, was the speech, and it is difficult to locate that speech within the four corners of the complaint, and that's what we're here for today. Look at that complaint and find out whether Judge Ponser got it right. So was that speech made public? And respectfully, you will not find within that complaint any suggestion that Captain Gilbert got on his bully pulpit and decided to make some comments about the Chicopee Police Department. I defy anybody to show that in the complaint. Secondly, there was a somewhat belated concession by the appellant that a number of the quote quote speech events, for want of a better phrase, was in fact ordered by his superiors or by the city of Chicopee. And counsel is correct, the pecking orders, the mayor, the chief executive, and the chief executive management below that. I think that this analysis that this court is going to do is de novo, as you all know, and I would ask you to look directly to the complaint, which is obviously in the appendix. And I ask you to look directly to paragraphs 33, 50, 53, 58, 69, 70, and 71. Each one of those has a paragraph that's specifically talks about either being ordered, or being suggested, or being authorized, or being directed to one, write a report, or two, participate in two investigations, one that was being conducted by the Hamlet County District Attorney's Office, and one that was being conducted by a third-party vendor hired by the City of Chickapoo. How is it that at any point in time, during that activity, which ostensibly, as best we can figure out, is the speech that he wants to have protected, was done in anything other than his capacity as a police officer for the City of Chickapoo? It defies logic. There's no way this court could draw a reasonable inference to the contrary. So when you get to that point, and you consider, which is, I would respectfully submit, the insightful case of Dakotis, they say to you, what should we be looking at for factors here? How can we see if we can define this? I would respectfully submit the courts are concerned that you don't want to limit free speech. But on the other hand, they have taken great pains to identify whether that speech is being done in official capacity or not. And when you walk through the factors, and by the way Judge Ponser did do that in his decision, and it's talking about, might I finish this one comment? Yes. It's talking about whether the speech was made in the chain of command. Yes, he was ordered to do it. In all situations, he was ordered to do it. Whether he was speaking on behalf of the employer. The employer told him to talk on behalf of the City of Chickapoo. Whether the speech was derived from personal knowledge. He was asked to give his observations about things he saw in the workplace. Respectfully, the maybe most telling comment in Dakotis, which is a question that was posed and is answered, I believe, by Judge Ponser, is when does the public employee take off his public employee hat and put on his citizen's hat? Respectfully, Your Honor, that never happened in this case. Thank you. Good morning. Nancy Franco-Pelletier from Robinson, Dunnivan and Springfield for the defendant's City of Chickapoo and the defendant, Mayor Koss. I would echo my brother's comments with respect to the First Amendment issue. I think that has been discussed fully. With respect to my clients, the City of Chickapoo and Mayor Koss, anything is possible, but everything is not plausible. And what this complaint suffers from, despite the fact that there were three amendments to this complaint, two of which occurred after not only the initial motion to dismiss was filed, but after oral argument on that motion to dismiss, this complaint lacks any factual basis for a finding against either Mayor Koss, who, as the Court is aware, was not the mayor involved during the initial time about which the plaintiff complains, or the City of Chickapoo. There is nothing in a Monell factor that would support a cause of action against the City of Chickapoo, nor are there any facts from which any reasonable inference could be drawn to support a claim against Mayor Koss. I would rely on my brief unless the Court has any questions. With respect to the dismissal of the state law claim against the mayor, paragraph 78, and I think it's 172 of the amended complaint, do allege that, whether it's in conclusory fashion or not, do allege that there were meetings between the mayor and other defendants with the specific purpose of retaliating. The only thing I heard about that this morning was an assertion that, in fact, the, I forgot the guy's name, the original, what's his name? No, the other guy with the short name. Jeb? Jeb. They all run together at some point. That Jeb acknowledged at a hearing that that was exactly what his intent was at those meetings. So how do you respond to that? Well, first, with respect to the mayor, as the Court just noted, these allegations are purely conclusory. This is what the plaintiff believed happened. Even if it was Jeb's intention, that doesn't indicate in any way, shape, or form that that was the intention of the mayor. The only allegation with respect to the mayor is, that supports that theory, is that he appointed Jeb with the knowledge of his prior wrongdoing. I would submit to the Court, the plaintiff himself has admitted, there was an appeal by Jeb who lost, who was not initially appointed, Chief Charette was. And thereafter, after that appeal, Jeb won. And so the mayor really had no choice but to appoint him. So the underlying allegation doesn't exist, which would support his claim that the mayor, as opposed to Jeb, had any intentions of wrongdoing with respect to the plaintiff. Thank you, Your Honor. Just to be brief, Your Honor, I would refer you to paragraph 33 and 57, just in response to my brother's comments regarding where in the complaint does it say it's other than his official duties. And it talks about, where he says he's a witness, it encompasses paragraph 26A to F, where he talks about the different things he witnessed, and he told the civil investigator, Mr. Provone, and in paragraph 57, he says this was not part of his duties to be doing this. He provided testimony as a witness on some of these events. If there's any case where someone should be protected for coming up and speaking forward regarding a co-worker misusing a firearm, a co-worker engaging in conduct that's alleged in here with respect to citizens of the public that are coming in and being placed into custody, this is it. So it's okay, I guess, then, to retaliate against someone for coming forward, cooperating, and providing information. Yeah, but I'm sorry, but the issue is really whether that was part of his official duties to report that. Right. And on a 12B6, it is in the complaint where it wasn't. Some of this was not part of his duties. You mean a police officer that sees somebody misusing a firearm doesn't have a duty to report it? He does and he did, but it was, it's more about the, it was, there were multiple issues other than the firearm. There's his lack... Well, you were talking about the firearm, though. You're correct, Your Honor, but I don't think you can take the complaint and put it in a vacuum. But he did report it. He reported it when it happened. Correct. But he just didn't write it down, so he must have assumed that he had a duty because he told his commander who told his commander. Correct. With respect to the gun incident, that would be accurate. I still don't understand what you're saying falls outside of a duty. I don't think with respect to his duties and responsibilities, he was a witness where Mr. Pavone came to him and said, I want you to tell me what happened. Everything that Jeb has allegedly done... So you're saying the mayor, who has the ultimate hiring and firing authority, that he would have a right not to respond to an investigation initiated by the mayor on something other than Fifth Amendment grounds? To stand here and say that in that military complex of, you're ordered to do it... It's a paramilitary organization. It's a paramilitary organization. He would have been disciplined. But with respect to all the information, he was ordered to provide the gun information and the fact that he reported at the time the stuff that was going on in the jail cells. Those are the two items. But there were other items that are listed in 26 that he was not ordered to provide. With respect to, I don't know if I can answer Judge Howard's last question regarding Mayor Koss, specifically the joint exhibit 54 and 56, as you would reference, that was Jeb's testimony under oath, that Koss knew of it and he tacitly let him go ahead when he did all of this plan to take out a criminal complaint against Mr. Gilbert. Thank you all.